IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTOR BLANCO, | : | Civil No. 3:24-cv-534 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| WARDEN TALUTTO, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Victor Blanco ("Blanco"), an inmate confined at the Lackawanna County Prison, in Scranton, Pennsylvania, initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Warden Talutto, Warden Pigga, and Grievance Officer Lando. Presently pending before the Court are Defendants' motions (Docs. 11, 15) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The motions are ripe for resolution and, for the reasons set forth below, the Court will deny the motions.

**I.      Allegations of the Complaint**

Blanco's complaint is concise and uncomplicated. (Doc. 1). At all relevant times, Blanco was housed at the Lackawanna County Prison. (*Id.*). He alleges that he has been held in segregation indefinitely and was never afforded a hearing to determine whether he should be housed in segregation. (*Id.* at p. 4). Blanco further alleges that he was denied the ability to freely exercise his religion because he was unable to attend religious ceremonies or receive religious meals. (*Id.* at p. 5).

Blanco asserts that Defendants violated his rights under the Eighth and Fourteenth Amendments by keeping him in segregation for a prolonged period of time without providing him sufficient process. (*Id.*). He also asserts that Defendants violated his First Amendment right to exercise his religion. (*Id.*).

## II.  Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations,...a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III. Discussion

### A. Eighth Amendment Claim

Blanco alleges that Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment by indefinitely placing him in segregation and refusing to place him in general population. (Docs. 1, 12). Because he is housed in segregation, he claims the conditions constitute solitary confinement. (*Id.*). The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. CONST. amend. VIII. Cruel and unusual punishment is punishment that "violates civilized standards of humanity and decency." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). Prison conditions are cruel and unusual if they deprive inmates of basic human needs, such as food, sanitation and medical care. *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022); *Dongarra v. Smith*, 27 F.4th 174, 178 (3d Cir. 2022) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981)); *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 417-18 (3d Cir. 2000). An inmate challenging the conditions of his confinement must show that the deprivation was objectively serious and that a prison official had a sufficiently culpable state of mind, that is, he or she acted with deliberate indifference. *Clark*, 55 F.4th at 186 (quoting *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020)); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

#### 1. Objectively Serious

Whether the harm is objectively serious is measured by society's view of the risk to the prisoner's health and safety, i.e., "whether 'it violates contemporary standards of

4

decency to expose *anyone* unwillingly to such a risk.'" *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 257 (3d Cir. 2010) (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)) (emphasis in original). The Eighth Amendment does not require comfortable prisons. *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (quoting *Rhodes*, 452 U.S. at 349). However, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Id.* (quoting *Farmer*, 511 U.S. at 832).

Blanco contends that his conditions of confinement in segregation are equivalent to solitary confinement and pose a substantial risk of serious harm to his mental health. (Docs. 1, 12). The Third Circuit has held that "prolonged solitary confinement" is objectively serious because it poses a substantial risk of serious psychological and physical harm. *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441-44, 451 (3d Cir. 2020). Indeed, there is a "robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation." *Clark*, 55 F.4th at 179 (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017)). The "severe and traumatic psychological damage" can "lead to high rates of self-harm or suicide in inmates who ha[ve] spent time in solitary confinement." *Id.* Blanco alleges that he has been in solitary confinement since January of 2024 and that this confinement has had detrimental effects on his psychological health. (Doc.1; Doc. 12, p. 1). He is allowed one hour of recreation out of his cell each day, which is occasionally denied. (Doc. 1-3, p. 1). He is allowed two to three showers a week

and is allowed to shave once a week. (*Id.*). These allegations, if proven, show that his conditions of confinement are objectively serious.

### 2.   Deliberate Indifference

Prison officials act with deliberate indifference when they "both know of and disregard an excessive risk to inmate health or safety. The...element of deliberate indifference is subjective, not objective...meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Mammana*, 934 F.3d at 373 (citing *Woloszyn v. County of Lawrence*, 396 F.3d 314, 321 (3d Cir. 2005) (omissions in original)). A prison official may act with deliberate indifference if he "had a reasonable opportunity to intervene and simply refused to do so." *Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018) (quoting *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002)).

Blanco alleges that Defendants knew of his prolonged and indefinite placement in segregation, but he continues to remain in solitary confinement. (Doc. 1, p. 5). The Third Circuit "has recognized 'the increasingly obvious reality that extended stays in solitary confinement can cause serious damage to mental health.'" *Clark*, 55 F.4th at 180 (quoting *Palakovic*, 854 F.3d at 226). Despite the risks to Blanco's mental health, he was not removed from segregation. Blanco continues to be housed in solitary confinement. Solitary confinement is not a *per se* violation of the Eighth Amendment. But, when the conditions of the confinement are inhumane or totally without penological justification, they may amount

to cruel and unusual punishment. See Clark, 55 F.4th at 188. Blanco alleges that there is no justification for his placement in segregation and he remains in segregation without explanation. If proven, these allegations are enough to show, at this stage in the proceedings, that Defendants acted with deliberate indifference to Blanco's psychological well-being.

Defendants point to evidence to support their motions to dismiss (Doc. 11, pp. 4-8; Doc. 15, pp. 8-20), but the Court cannot consider these documents at the Rule 12(b)(6) stage. Rather, the Court is constrained to the allegations in the complaint and its attached exhibits, "matters of public record, [and] undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted). Of the documents Defendants include as exhibits to their motions to dismiss—emails between prison officials, an incident report, and photographs of contraband—only attached to Blanco's complaint are inmate grievances. As such, the Court will deny the motions to dismiss the Eighth Amendment claim.

B. **Fourteenth Amendment Claim**

Blanco's solitary confinement claim is a combination of his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to procedural due process. When analyzing a due process claim based on a stay in solitary confinement, the first step is to determine whether the plaintiff alleged a deprivation of his

7

constitutionally protected liberty interest. *Shoats v. Horn*, 213 F.3d 140, 143-44 (3d. Cir. 2000). If such a deprivation is alleged, the second step is to determine whether the plaintiff received "all of the process he was due." *Id.* at 143.

A prison official can deprive an inmate of his constitutionally protected liberty interest by keeping him in solitary confinement if such a stay "impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To determine the significance of the alleged hardship, courts consider the length and nature of the stay in confinement. In so doing, this Court finds that Blanco's alleged indefinite stay in segregation is sufficient to allege a hardship outside those imposed in the ordinary course of prison life. *See Williams v. Sec'y Pa. Dept. of Cors.*, 848 F.3d 549, 561 (3d Cir. 2017) (finding that six years and eight years in solitary confinement presented an atypical hardship); *Shoats*, 213 F.3d at 144 (finding that eight years in solitary confinement presented an atypical hardship).

Having found that Blanco sufficiently alleged an atypical and significant hardship, the Court must determine whether Blanco alleged that he did not receive the process he was due. *Shoats*, 213 F.3d at 143. In *Shoats*, the Third Circuit held that a prison must provide a prisoner with an opportunity to present an "informal, non-adversary review" to "the prison official charged with deciding" his status. *Id.* at 145 (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)). Here, Blanco alleges he was not given the opportunity to present a meaningful review and was never afforded a hearing regarding his placement in segregation. Given

Blanco's alleged lengthy stay in segregation and the absence of opportunity for meaningful review, the Court finds that he has alleged grounds to be entitled to some amount of process for continued detention.

Thus, Blanco alleges enough facts to state a claim at the pleading stage. Whether Blanco faced an atypical hardship and received inadequate process for his continued detention in solitary can only be addressed after full discovery.

### C.    First Amendment Claim

Blanco asserts that he has been denied the right to freely pursue his religious beliefs under the First Amendment. The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…" U.S. CONST. amend. I. It offers protection for a wide variety of expressive activities, which are lessened, but not extinguished, in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Although prisoners must be afforded "reasonable opportunities" to exercise the religious freedoms guaranteed by the First Amendment, *see Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (*per curiam*), imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment right to the free exercise of religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348-49 (1987). Only beliefs which are both sincerely held and religious in nature are entitled to constitutional protection. *Wisconsin v. Yoder*, 406 U.S. 205, 215-19 (1972); *Dehart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000).

Once it is established that the individual has a belief that is "both sincerely held and religious in nature," the *Turner* test must be applied to determine whether the curtailment at issue is reasonably related to penological interests. *DeHart*, 227 F.3d at 51. Specifically, *Turner* instructs courts to weigh the following four factors in determining the reasonableness of a challenged prison regulation: (1) "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are "ready alternatives" available "that fully accommodate the prisoner's right at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 89-91; *O'Lone*, 482 U.S. at 350-52.

Blanco alleges that Defendants denied his request to attend religious ceremonies and to receive religious meals, without any explanation. (Doc. 1, p .5). While a court may sometimes be in a position to apply the *Turner* factors based on the pleadings alone, often a factual record is necessary to assess whether the regulation or practice is reasonably related to legitimate penological interests. *See Ramirez v. Pugh*, 379 F.3d 122, 126-30 (3d Cir. 2004) (reversing grant of a motion to dismiss and remanding for development of the factual record).

Drawing all reasonable inferences from Blanco's allegations, he appears to allege a sincerely held belief. And, since his requests for religious ceremonies and items were denied, there appear to be no alternatives to Blanco's religious practice. However, based on the claim presented, the Court cannot assess the *Turner* factors without a developed factual record.

## IV. Conclusion

Consistent with the foregoing, the Court will deny Defendants' motions (Docs. 11, 15) to dismiss. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: October 4, 2024