IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTOR BLANCO, | Civil No. 3:24-cv-534 |
| Plaintiff | (Judge Mariani) |
| v. | |
| WARDEN TALUTTO, *et al.*, | |
| Defendants | |

### MEMORANDUM

Plaintiff Victor Blanco ("Blanco"), an inmate confined at the Lackawanna County Prison, in Scranton, Pennsylvania, initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Warden Talutto, Warden Pigga, and Grievance Officer Lando. Defendants previously moved to dismiss the complaint pursuant to Rule 12(b)(6). (Docs. 11, 15). By Memorandum and Order dated October 4, 2024, the Court denied Defendants' motions. (Docs. 20, 21).

Presently before the Court is Defendants' motion (Doc. 24) for summary judgment pursuant to Federal Rule of Civil Procedure 56. Blanco failed to respond to the motion and the time for responding has now passed.[1] Therefore, the motion is deemed unopposed and

---

[1] Blanco was directed to file a brief in opposition to Defendants' motion and was admonished that failure to file an opposition brief would result in Defendants' motion being deemed unopposed. (Doc. 26) (citing LOCAL RULE OF COURT 7.6).

ripe for resolution. For the reasons set forth below, the Court will grant Defendants' motion and enter judgment in their favor.

I. **Statement of Undisputed Facts**[2]

At all relevant times, Blanco was housed at the Lackawanna County Prison while awaiting federal charges for assault with a dangerous weapon. (Doc. 24-1, at 2 ¶ 1; Doc. 24-1, at 6). He was charged with the following misconducts while housed at the Lackawanna County Prison.

On March 14, 2023, Blanco was found with a weapon concealed inside his waistband. (Doc. 24-1, at 2 ¶ 3; Doc. 24-1, at 8-9).

On June 27, 2024, Blanco was charged with disciplinary misconduct for interfering with count, disobeying a direct order, misuse of county property, and posting items to the wall. (Doc. 24-1, at 3 ¶ 11; Doc. 24-1, at 43).

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Unless otherwise noted, the factual background herein derives from Defendants' Rule 56.1 statement of material facts and supporting exhibits. (Doc. 24-1). Blanco did not file a response to Defendants' statement of material facts. Therefore, as authorized by Local Rule 56.1, the Court will admit as uncontroverted the statement of facts submitted by Defendants. *See* M.D. PA. LOCAL RULE OF COURT 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); *see also Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019) (upholding this Court's decision to strike non-movant's non-responsive counterstatement of facts under Local Rule 56.1); *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (finding that "the District Court is in the best position to determine the extent of a party's noncompliance with Local Rule 56.1, as well as the appropriate sanction for such noncompliance"); *see also* Doc. 26 ¶ 2 (advising Blanco that failure to file a responsive statement of material facts would result in the facts set forth in Defendants' statement of material facts being deemed admitted).

On September 30, 2024, Blanco was charged with disciplinary misconduct for possessing contraband, possessing contraband—altered item, and misuse of a commissary item. (Doc. 24-1, at 3-4 ¶ 12; Doc. 24-1, at 46).

On October 2, 2024, Blanco was charged with disciplinary misconduct for misuse of county property and possession of contraband—deadly weapon. (Doc. 24-1, at 4 ¶ 13; Doc. 24-1, at 48).

On November 18, 2024, Blanco was charged with disciplinary misconduct for possessing contraband and possessing alcohol/drugs. (Doc. 24-1, at 44).

The Lackawanna County Prison has a policy regarding Administrative Segregation and Special Handling Inmates. (*Id.*, at 3 ¶ 9; Doc. 24-1, at 36-38). Blanco was classified as Special Handling—Violent, due to his history of assaultive behavior and the many times he was found in possession of weapons while in custody. (Doc. 24-1, at 40). Inmates classified as Special Handling—Violent require additional security measures. (*Id.*; Doc. 24-1, at 37).

The Lackawanna County Prison has a policy regarding Religious Programs. (Doc. 24-1, at 2 ¶ 4; Doc. 24-1, at 23-28). The policy allows inmates to "satisfy the needs of their religious life consistent with the orderly administration of the prison." (Doc. 24-1, at 23). Certain privileges attach to selecting a religious preference, including the ability to possess personal religious articles and attend worship services. (*Id.* at 23-28). In January of 2024, Blanco requested a religious headdress. (Doc. 24-1, at 2 ¶ 5). On January 19, 2024, a

corrections counselor attempted to give Blanco the religious headdress, however Blanco refused to accept the headwear. (*Id.*, at 3 ¶ 6; Doc. 24-1, at 30). On September 11, 2024, Defendants again attempted to address Blanco's religious needs and he indicated that he belonged to the Pipil tribe. (Doc, 24-1, at 3 ¶ 7; Doc. 24-1, at 32).

## II. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III. Discussion

### A. Eighth Amendment Claim

Blanco alleges that Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment by indefinitely placing him in segregation and refusing to place him in general population. (Docs. 1, 12). Because he is housed in segregation, he claims the conditions constitute solitary confinement. (*Id.*). Defendants argue that they are entitled to summary judgment because Blanco alleges no deprivation or harm beyond his mere placement in the Special Handling Unit. (Doc. 25).

The Eighth Amendment prohibits cruel and unusual punishment that "violates civilized standards of humanity and decency." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). Prison conditions are cruel and unusual if they deprive inmates of basic human needs, such as food, sanitation, and medical care. *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981). The Eighth Amendment does not, however, require that prisons be comfortable. *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (citing *Rhodes*, 452 U.S. at 349).

To successfully establish an Eighth Amendment violation, plaintiffs must make both an objective and subjective showing. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective prong, the prisoner "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Mammana*, 934 F.3d at 373 (quoting *Farmer*, 511 U.S. at 834). The deprivation alleged must be "objectively, sufficiently serious" so as to

6

have resulted in the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) and *Rhodes*, 452 U.S. at 347). A prisoner must then show that the prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 229 (3d Cir. 2015) (quoting *Farmer*, 511 U.S. at 847). The prisoner "may demonstrate deliberate indifference by showing that the risk of harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past such that the defendants must have known about the risk." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (3d Cir. 2010) (quoting *Farmer*, 511 U.S. at 842-43) (internal quotation marks omitted).

The Third Circuit has held that "prolonged solitary confinement" is objectively serious because it poses a substantial risk of serious psychological and physical harm. *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441-44, 451 (3d Cir. 2020). Indeed, there is a "robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation." *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022) (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017)). The "severe and traumatic psychological damage" can "lead to high rates of self-harm or suicide in inmates who ha[ve] spent time in solitary confinement." *Id.*

Defendants argue that Blanco's claim fails both prongs of the analysis. (Doc. 25). They contend that the summary judgement record contains no evidence that Blanco's

placement in the Special Handling Unit rises to the level of an objectively, sufficiently serious condition. (*Id.*). They further contend that there is no evidence that Defendants acted with deliberate indifference. (*Id.*)

Blanco maintains that his conditions of confinement in segregation are equivalent to solitary confinement and pose a substantial risk of serious harm to his mental health. (Doc. 1). Blanco alleges that he has been in solitary confinement since January of 2024 and that this confinement has had detrimental effects on his psychological health. (*Id.*). He is allowed one hour of recreation out of his cell each day, which is occasionally denied. (Doc. 1-3, p. 1). He is allowed two to three showers a week and is allowed to shave once a week. (*Id.*).

Defendants argue, however, that there are no medical or psychological reports to indicate that Blanco has been harmed by being placed in the Special Handling Unit. (Doc. 25, at 7-8). Defendants further argue that there is no evidence that they harmed Blanco in any way. (*Id.*). Blanco failed to submit any argument or documentary evidence to refute Defendants' claims. Blanco's challenge to his mere placement in the Special Handling Unit generally, is an insufficient basis for his Eighth Amendment claim.

Blanco has also failed to present any evidence that he was denied "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. "Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* at 832. There is no

evidence of record suggesting that Blanco was denied basic necessities such as food or water or that he was housed in a cell that had persistent unsanitary or unsafe conditions. Also, the record shows that Blanco was receiving at least some reviews with counselors and that he had the ability to file grievances and was specifically advised to file a Classification Appeal Form to challenge his housing assignment. (Docs. 1-1, 1-2, 1-3; Doc. 24-1, at 34). These processes gave him a forum to address any concerns related to his confinement in the Special Handling Unit.

Further, as to the subjective component of the Eighth Amendment test, courts must also consider whether officials "had a legitimate penological purpose" behind their conduct. *Ricks v. Shover*, 891 F.3d 468, 475 (3d Cir. 2018). Blanco was placed in the Special Handling Unit following the numerous incidents during which he was found with concealed weapons. The undisputed record shows that Blanco was found on at least five occasions with homemade shanks, concealed weapons, and in possession of deadly weapons. (Doc. 24-1, at 2-4 ¶¶ 3, 11-13; Doc. 24-1, at 8-9, 43-44, 46, 48).

Several of the prison communications and counselor reviews specifically state that the reason for his placement in the Special Handling Unit is a "very violent past [with] zero reservations with using violence when triggered" and "history of assaultive behavior and [the] numerous times he was found in possession of weapons while in custody." (Doc. 24-1, at 34, 40). The uncontroverted record therefore shows that Blanco was not placed in the

9

Special Handling Unit randomly or without reason, but as a result of multiple violent episodes and possession of weapons.

Because the record does not establish that Blanco was subjected to a substantial risk of serious harm and that there was a legitimate penological purpose for his placement in the Special Handling Unit, Defendants are entitled to summary judgment in their favor on the Eighth Amendment claim.

### B.    Fourteenth Amendment Claim

Blanco's solitary confinement claim is a combination of his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to procedural due process. When analyzing a due process claim based on a stay in solitary confinement, the first step is to determine whether the plaintiff alleged a deprivation of his constitutionally protected liberty interest. *Shoats v. Horn*, 213 F.3d 140, 143-44 (3d. Cir. 2000). If such a deprivation is alleged, the second step is to determine whether the plaintiff received "all of the process he was due." *Id.* at 143.

A prison official can deprive an inmate of his constitutionally protected liberty interest by keeping him in solitary confinement if such a stay "impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To determine the significance of the alleged hardship, courts consider the length and nature of the stay in confinement. In so doing, this Court finds that Blanco's alleged indefinite stay in segregation is sufficient to allege a hardship outside those

imposed in the ordinary course of prison life. *See Williams v. Sec'y Pa. Dept. of Cors.*, 848 F.3d 549, 561 (3d Cir. 2017) (finding that six years and eight years in solitary confinement presented an atypical hardship); *Shoats*, 213 F.3d at 144 (finding that eight years in solitary confinement presented an atypical hardship).

In *Shoats*, the Third Circuit held that a prison must provide a prisoner with an opportunity to present an "informal, non-adversary review" to "the prison official charged with deciding" his status. *Id.* at 145 (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)). The uncontroverted record reveals that Blanco filed grievances related to his placement in the Special Handling Unit and was advised to file a Classification Appeal Form to challenge his placement in this Unit. (Docs. 1-1, 1-2, 1-3). The record further reveals that he met with a prison counselor regarding his housing assignment. (Doc. 24-1, at 34).

The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989). Blanco has wholly failed to meet this burden in that he neglected to oppose Defendants' motion for summary judgment. The Court finds that there exists no genuine issue as to whether Blanco was afforded adequate due process throughout his time in the Special Handling Unit. Defendants are entitled to summary judgment on the Fourteenth Amendment claim.

### C.  First Amendment Claim

Blanco asserts that he has been denied the right to freely pursue his religious beliefs under the First Amendment. The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…" U.S. CONST. amend. I. It offers protection for a wide variety of expressive activities, which are lessened, but not extinguished, in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Although prisoners must be afforded "reasonable opportunities" to exercise the religious freedoms guaranteed by the First Amendment, see *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (*per curiam*), imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment right to the free exercise of religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348-49 (1987). Only beliefs which are both sincerely held and religious in nature are entitled to constitutional protection. *Wisconsin v. Yoder*, 406 U.S. 205, 215-19 (1972); *Dehart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000).

Once it is established that the individual has a belief that is "both sincerely held and religious in nature," the *Turner* test must be applied to determine whether the curtailment at issue is reasonably related to penological interests. *DeHart*, 227 F.3d at 51. Specifically, *Turner* instructs courts to weigh the following four factors in determining the reasonableness of a challenged prison regulation: (1) "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2)

whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are "ready alternatives" available "that fully accommodate the prisoner's right at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 89-91; *O'Lone*, 482 U.S. at 350-52.

Blanco alleges that Defendants denied his request to attend religious ceremonies, receive religious meals, and possess certain personal religious articles, such as prayer rugs and headwear. (Doc. 1, p .5; Doc. 1-4).

The record reflects that the Lackawanna County Religion Policies are rationally related to legitimate penological goals. (Doc. 24-1, at 23-28). Specifically, the various policies are in place for a myriad of reasons which are rationally related to valid legitimate correctional interests such as security concerns, simplification and uniformity in operations, and increased efficiency and administration. (*Id.*). This uncontroverted evidence demonstrates that the policies and practices applicable to the areas challenged by Blanco are rationally related to valid legitimate penological interests. The first *Turner* factor weighs in favor of Defendants.

As to the second factor, it is undisputed that on January 19, 2024, a corrections counselor attempted to give Blanco a religious headdress, however Blanco refused to accept the headwear. (Doc. 24-1, at 3 ¶ 6; Doc. 24-1, at 30). In September of 2024, a

prison official again spoke with Blanco regarding his religious needs. (Doc, 24-1, at 3 ¶ 7; Doc. 24-1, at 32). Blanco informed the official that he belonged to the Pipil tribe. (*Id.*). Blanco does not dispute that Defendants provided him with these opportunities to practice his religion. The second *Turner* also factor weighs in favor of Defendants. *See Williams*, 343 F.3d at 219.

With respect to the third factor, beyond the accommodations already in place, accommodating certain inmate requests would have an additional impact on prison guards, other inmates, and on the allocation of prison resources generally. This factor weighs in favor of Defendants.

Finally, "the [fourth factor] inquiry is whether there are alternatives that would impose only 'de minimis cost to valid penological interests.'" *Fraise v. Terhune*, 283 F.3d 506, 520 (3d Cir. 2002) (quoting *Turner*, 482 U.S. at 91). The record demonstrates that the Lackawanna County Prison has an extensive policy to provide religious accommodations to inmates. (Doc. 24-1, at 23-28). It also shows that additional alternatives cannot be provided at a de minimis cost, monetary or otherwise.

Despite Blanco's failure to oppose Defendants' Rule 56 motion, it is clear on the record that Defendants made an attempt to strike a balance between accommodation of Blanco's rights and the orderly administration of the Lackawanna County Prison. Defendants are therefore entitled to an entry of summary judgment on Blanco's First Amendment claim.

## IV. Conclusion

The Court will grant Defendants' motion (Doc. 24) and enter judgment in their favor. A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: April 3, 2025